25-7068, counsel for appellant, if you would make your appearance and proceed, please. Thank you and good morning, your honors. Stephen Terrell on behalf of the appellant in the estate of Jared Lakey. This appeal follows from a jury verdict, specifically the issues before the court. I'm going to do my best to go through chronologically consistent with the briefing. One, whether the district court erred in granting qualified immunity to Sheriff Bryant without determining whether the constitutional violation was obvious, especially in light of the evidence that Bryant knew his policy created a substantial risk of harm. The next being that the district court erred in granting summary judgment to the sheriff of Carter County by requiring a pattern of excessive force incidents, despite a fact dispute regarding ratification by a final policymaker. The third was the exclusion of evidence that involved the employment relationship, and the exclusion of that evidence was a recorded conversation between the district attorney's office and David Dugan, a deputy for the sheriff. Fourth would be a request for the expuliation sanctions based on circumstances that included the existence of a duty to preserve evidence by the sheriff and multiple notices of the duty to preserve, and six months of inaction leading to the destruction of evidence to the detriment of the plaintiff or the appellant. The district court, I'm going to start with the qualified immunity issue. The district court found sufficient evidence to create a tribal issue on the deliberate indifference of Bryant. A reasonable jury could find that Sheriff Bryant should be held liable in his individual capacity because he knew that this policy would cause harm and yet failed to act, thus causing Mr. Lakey's injuries. The district court granted the qualified immunity on the clearly established prong, finding that there was no clearly established case law that was previously on point, but it limited its inquiry without determining whether it satisfied the standards for an obvious violation. There's no debate as to whether Bryant violated Lakey's constitutional rights, and the plaintiff can establish clearly established rights in three ways. Number one, a similarly published case at the Tenth Circuit of the Supreme Court. Number two, a clearly established weight of authority from other courts. Or three, that the conduct is such that an official has noticed that their conduct violates the constitutional right because it is so apparent as to the obvious clarity. We address this. Did you argue to the district court the obviousness prong, and did you cite cases that would say that this was obvious conduct? Yes, Your Honor. I believe the plaintiff addressed this specifically in the response to Bryant's Rule 56 motion. I believe, if I'm not mistaken, we had cited Brown v. the City of Tulsa, 2025. The court never addressed the obvious argument. And, I mean, qualified immunity is not intended to be an insurmountable obstacle. The finding of actual knowledge that Bryant had moves this far beyond anything that could be argued as a gray area. So what are the facts that make this obvious? Well, number one, that Bryant testified that he knew that this mutual aid policy, which is sort of the crux of what we're kind of talking about here. Number one, that he knew that he had this policy, that the policy specifically was intended that his deputies of Carter County were going to be providing mutual aid to smaller surrounding and, to be frank, rural communities surrounding that area of Carter County. Okay, there's nothing wrong with that. Certainly not. There's nothing unconstitutional. There's nothing problematic about having a mutual aid policy. However, he testified specifically that he understood that that mutual aid policy exposed his deputies and the citizens to an increased risk and that he knew, because he had had different deputies tell him, that they felt like, quote-unquote, they were on their own when they arrived at these mutual aid calls. Whether we're talking about Deputy Billy Mitchell or we're talking about David Dugan, the sheriff testified that he was aware of an increased risk. Well, that exposed them to an increased risk, but that's not the risk we're talking about. We're talking about whether it's a risk to the public, to the people who would be victimized. So those are two different things. I mean, as a matter of common sense, if you send somebody out there to do any sort of criminal intervention, I mean, criminal law enforcement intervention, and they're on their own, yes, they're at an increased risk, but that doesn't say that they're going to be doing something that would cause harm to the public because they're at increased risk. The sheriff testified specifically that he understood and appreciated that there was an increased risk based upon the fact that his deputies had told him that they had not been backed up, that they would arrive at these calls and not feel as though that they were going to receive backup. Increased risk to whom is what I'm getting at. The citizens and his deputies. Well, does he say that in his testimony or does he say increased risk to his deputies? I mean, what you just had referenced to me sounded like increased risk to his deputies, not to the public. I believe that it was both to the deputies and increased risk to the public or citizens in general. I obviously can go back and look at that testimony, but the question still arises in my mind, which I hope you can help me with, is even if that's true, that's just his view. I mean, that's not the standard here, right? The standard is what a reasonable officer would understand. This is an objective standard. It's not, you know, so what he thinks, what risk he thinks would come from it is not the determinative thing, right? Yeah, but he's implementing this mutual aid policy and understanding that there are actual risks that he is aware of, and he's continuing this mutual aid policy in spite of those risks. I'm not sure you answered my question. My question is, under a clearly established law standard, it is an objective standard, right? Both parts are an objective standard. It's what a reasonable officer would know, and for purposes of the clearly established law, it's going to be the same thing. I mean, subjective nature of one officer's knowledge is not determinative, right? Yeah, but I don't think that we're talking about the subjective knowledge of just one officer. That subjective knowledge is then imparted over into the sheriff with the supervisory liability. The sheriff. Let's talk about the sheriff. Yes, sir. Okay, well, is his knowledge enough? That his mutual aid policy is exposing a risk to the public and the deputies? Yes. I would believe so. In what cases do you have, isn't this an objective standard? This is an objective standard, yes. Okay. But it's also a subjective admission and testimony by the sheriff that he admitted into knowing that there was an increased risk to the deputy and the citizens. I'm not saying it's irrelevant. I'm just saying it's not determinative, is it? No, I think the overall issue here is that we believe that the court failed to even address whether there was an obvious risk based upon this objective and subjective knowledge of the sheriff. Well, let's focus then on that piece. That is a legal determination, whether it is so obvious that it would satisfy the clearly established law standard. Is that right? Yes. Okay. Well, ultimately, we can look at the record and make that determination. Can we not? I would believe so, Your Honor. Okay. Well, what about this looks anything like the cases where we have found obviousness in the past or the Supreme Court? And if you've got a case, talk to me a little bit about how the facts line up with this. I'm thinking about things like Taylor v. Rojas. This looks nothing like that. It looks nothing like most of the cases that we've had that involve obviousness. I hearken back to now Justice Gorsuch's case where the officer is driving through multiple red lights. This is nothing like that. So give me your best case where the facts would line up where we have found obviousness in the past that should lead us to infer that there's obviousness here. I believe Your Honor brought up the Taylor v. Rojas case. And I believe in that particular case the Supreme Court reaffirmed hope in holding that an inmate was not required to identify a case on point because no reasonable officer could believe it was constitutionally permissible to house people in, quote, unquote, deplorable, unsanitary conditions. In the Hope decision from 2002, the Hope decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional. I'm not questioning that the doctrine exists. And maybe I was not clear. What I am saying is that in order for us to make the legal determination that this case is an obvious case, we need to look at, presumably, cases in the past where we or the Supreme Court have said this is an obvious case. And so in Taylor v. Rojas, the Supreme Court said this is an obvious case. In the case, I think it was Buck v. Albuquerque or whatever, where Justice Gorsuch, now Justice Gorsuch, said that it was an obvious case, that the officer was driving through multiple red lights when he didn't have his lights on, his emergency lights. Well, that was an obvious case. So what I'm asking you is, to the extent that our case law has spoken to this issue, what is your closest reference point for this case that should lead us to say, oh, yeah, this is similarly egregious to those cases? I think it would have to be Dodds v. Richardson. And that Tenth Circuit case from 2010 was that deliberate indifference can be satisfied by evidence showing that the defendant knowingly created a substantial risk of constitutional injury. What about the facts of Dodds are similar to this case in terms of level of egregiousness? That the local government policymaker was deliberately indifferent when he deliberately or consciously failed to act when presented with an obvious risk of constitutional harm, inevitably resulting to a constitutional injury like the one described by the plaintiff. But what were the obvious, what were the facts? I mean, what were the obvious risks? I'm sorry, Your Honor, I'm not going to be able to. Because that's a statement of law, basically, that you were reading right there. Let me ask you a question, Seth. Sure. As I wrote this down, and it seems this is how you framed it, that it is obviously unlawful to enforce a policy where excessive force was predictable. Does that sound like the way you've articulated it? That sounds generally there. Okay. And what I've heard this morning is discussion about how this mutual aid policy created risk to deputies and to the public, maybe. But I haven't heard anything about why the risk is the risk of excessive force. What was the obvious testimony about that? Connecting the dots, in other words?  So the issue, again, and maybe I'm failing to answer your question, but I'm going to do my best. The way to connect those dots is the reason it was predictably going to result in a constitutional injury is because these officers, these deputies specifically, were going out on these mutual aid calls, specifically with these rural communities. And in this particular case, we're talking about the city of Wilson. Maybe a handful of officers, not very many. And this routine and repeated issue of they would arrive, the deputies would arrive on scene, they would end up having to use excessive force because they did not believe that they were going to end up having any backup from the other individuals. In this particular case. Why does that result in excessive force? I mean, maybe it happened. Maybe there was excessive force, but what's the link between not having backup and excessive force? Because the force that's going to be used is disproportionately larger than in a situation where you believe you have backup from the other officers, you know that you're going to be handcuffing in power with the assistance of other officers, you believe that in this particular case you're going to be using a lateral vascular neck restraint to end this situation right away. What's the evidence of that, though? I mean, you're extrapolating, but did the witness say that? Yes. David Dugan and Billy Mitchell both testified. Well, if you're asking, did they testify that they used excessive force? Did they say, when I go out on these mutual aid calls because I'm not going to have backup, I have to be tougher with the suspect? I can't recall a specific testimony on that to be that pointed, Your Honor, no. Okay. It looks like I've got about a minute. I failed to probably address three of the four issues that we have brought before. I'd like to reserve some time if at all possible. Yes. Please, counsel. May it please the Court. My name is Rebecca Boyer, and I represent the sheriff of Carter County in his official capacity, as well as Chris Bryant in his individual capacity as a former sheriff of Carter County. Now, plaintiff brought suit against numerous individuals and numerous entities, but as to the sheriff's office, he initially brought a lawsuit against David Dugan for claims of excessive force. Those were subsequently dismissed on appeal after qualified immunity was denied to David Dugan. And plaintiff also sued Chris Bryant in his individual capacity, which is what plaintiff has or appellee has focused most of his time on, as well as the sheriff of Carter County in his official capacity. And Chris Bryant in his individual capacity was granted qualified immunity, and the case ultimately went to trial on the Monal liability claims for this mutual aid policy. And the mutual aid policy by its own terms just allows for officers to provide for aid to others in need and to receive aid from other agencies when the need arose. And plaintiff's claims are that the policy caused a violation, and then that was inadequate training regarding the policy. The jury found against the plaintiff and for the sheriff on those claims, and I bring this up because it is our position that those very same claims were decided at the jury trial in favor of the sheriff. And so plaintiff is now at this point barred from raising those claims because they include the same exact finding site by the court or by the jury. Was it a special verdict or a general verdict? It was a general verdict, Your Honor. And there were two claims. The claims of the Monal policy, whether the mutual aid policy caused the violation, and that was found in favor of the sheriff. And it was also a claim for inadequate training on the mutual aid policy, which was also found in favor of the sheriff. So what issues do you assert are barred to be revisited based on the jury finding? The jury finding in favor of the sheriff in this case are the exact claims that plaintiff is bringing on the qualified immunity for Chris Bryant, that he maintained a policy of mutual aid knowing that a risk was likely to happen. And that is the exact same claim that the jury heard evidence on, that the mutual aid policy was maintained knowing that a risk of harm could occur. Those are the exact same claims. And like this court in Eisenhower versus Weber County in 2018, found that even if there was error in any judgment as a matter of law on the individual, that the jury's favor in favor of the entity shows that any error was harmless. So it's our position that plaintiff is barred from even bringing this claim in his individual capacity, that even if it would be harmless because a jury found in favor of the sheriff in that. But even if this court were to consider the merits of plaintiff's arguments on the qualified immunity fence for Chris Bryant, plaintiff is viewing these claims in very broad general terms instead of the specific context of the case. And plaintiff's sites, like Justice Holmes has argued, is that there's no case law that is on point even remotely clear. Plaintiff's sites to, I believe it was Dodds versus Richardson. Yes, Your Honor. Dodds versus Richardson, which is dealing with an inmate being held in a county jail without being allowed to postpone until he saw a judge. That doesn't have anything to do with the facts, the underlying facts in the context of this case. Because what plaintiff wants to do is ask this court to find that a theoretical exercise or theoretical use of excessive force is unconstitutional based off of a policy that's never had any issues before. He wants this court to find that maintaining a mutual aid policy of providing aid to other agencies with knowledge that officers may have to encounter other agencies with less training and may have to use force that they won't normally use, but that there has been no allegations of any officer using excessive force in responding to other agencies, no allegations of excessive force in responding to mutual aid, and that all of the officers are trained on the proper use of force, that this, somehow, this theoretical knowledge that something may happen is unconstitutional, and so obviously so. And there's no case law at all to point to any of that. I want to turn back. I know I'm going backwards, but your argument that because the jury found against the plaintiff that we're done, what if we found there was an error in how the jury reached that verdict and some of the arguments that are being made impacted what evidence came in, and so if we were to say that those were harmful errors, he'd get a retrial, and it wouldn't mean that we're barred from looking at these issues, right? Yeah, so unless a court reverses judgment in favor of the county, then unless you reverse that court, that judgment. Well, let me ask you about the spoilation ruling. The district court was wrong about who has the burden on that one. The district court said that it had to put the burden on the plaintiff because they were the ones trying to get a sanction, and yet the comments to Rule 37E say that the district court has discretion to determine who it wants to have the burden. Isn't that, I mean, that's an abuse of discretion if it's an error of law, isn't it? I do not believe that plaintiffs have showed an abuse of discretion in this because there has to be a finding of prejudice for sanctions to be applied, and the court found that there was no finding of prejudice to plaintiffs because of a hypothetical three to four missing text messages that were made after the fact, not in anything that happened to do with the underlying incident itself, but three to four missing text messages that occurred after the incident. So it would be post-evidence regarding those text messages that is just pure speculation. That's all that plaintiff has is just pure speculation. Well, that's always the case if the evidence has been destroyed. You don't know what it would have shown. That's why we have a sanction for destroying evidence. And, you know, the fact that it's immediately after the event with two people who were pretty involved in the event, you know, you can make a reasonable inference that it might have been information relevant to it. And, of course, you don't know what you don't know. However, there's... And you'll never know if it's destroyed. But this isn't the type of a case of evidence that is central to the plaintiff's claims. The evidence, the cases that plaintiff cites to in regards to spoliation and whether sanctions are appropriate deal with things like, for example, there's a cell phone that is being used during the commission of an offense itself that would explain whether or not that officer was on duty or not. This is not that type of situation. Or the type of situation where the evidence portrays or relays the actual incident in question. There was no finding that any of these were... that the cell phone destruction was done intentionally or with intent to  The court found that it was at most negligent. And we're not going to dispute that. However, that there is no abuse of discretion in three missing to four missing text messages when there were copies of text messages that were provided to plaintiff's counsel between David Dugan, the person who had been alleged to have committed excessive force, and Chris Bryant. Plaintiff's counsel had copies of those text messages. They were able to see the call log and the text messages log. They were also able to cross-examine Chris Bryant on those missing text messages, cross-examine David Mitchell, who Chris Bryant sent the missing text messages to, regarding any of the contents of those. So whatever happened after the fact, that's what we're dealing with. We're not dealing with destruction of evidence, whether inadvertently or not, of something that explains the current events of what happened during that incident. Let me see if I understand from an evidentiary basis here. So you're saying what happened at trial is that the text message, I mean, the company who provides the phone service can presumably provide the text messages. I think it depends on the actual company. But in this case, there was a log of the texts. There was logs of, yes, of text messages being sent to certain numbers that we were able to deduce. Okay. And you could tell from the numbers that it was text messages between person A and person B, person B and person C, that type of thing. Yes, Your Honor. Okay. And then the plaintiff was able to examine any witness he wanted about those. Absolutely. Okay. But what was missing was the actual text of the text messages. Yes. Okay. Yes. And this was to an individual who was transporting the David Dugan to the hospital. All of those, it's just pure speculation at this point as to what evidence that would have been relevant or not. But the court found appropriately. I guess the pure speculation, I mean, that's what happens when you have someone destroy evidence. It's always going to result in us having to speculate what might have been there. And when you say they were cross-examined, it's a lot more effective to cross-examine someone if you can pull out the text message and show they're lying. Right? Of course. I mean, you put them on the stand and say, what did you say? We discussed the weather. I mean, you know, you can't do anything to dispute that if you don't have the text messages. And there was no way to get it from the provider because he wasn't connected to the cloud. Right? Correct. The iPhone itself was too old to be able to connect to the cloud. So I don't think that you can fault the sheriff for not having a newer iPhone. Does 37E2 require a showing of prejudice? 37E2 finds that there has to be an intent to deprive. An intent to deprive. And that's when appropriate sanctions can be applied. And in this court. My question was, is there a showing of prejudice required with E2? I don't believe so. But there has to be an intent to deprive. Okay. And in this case, did the district court not make a determinative that there was not a showing of prejudice? He found that there was not a showing of prejudice because it's all based off of pure speculation on something that happened after the effect and not anything that has to do with the constitutional violations that Plaintiff is actually alleging. My point is, couldn't there have been the provision of remedies under E2 without a showing of prejudice? There cannot be a finding sanctions under E2 without finding that there was an intent to deprive. And the court found that there was no intent to deprive. But the court also said that I'm making these findings because the burden is on the Plaintiff. And the court said that it had to put the burden on the Plaintiff. And that is simply not true. The rule allows for flexibility for the court to put the burden where it makes the most sense under the facts in order to effectuate the intent of the rule. Yes, Your Honor. However, whether or not it was a heightened burden on Plaintiff, I don't believe that it was. I didn't say heightened. I said the burden. The burden can fluctuate, like you just said. And the court found that there was no prejudice to three missing text messages over the course of this entire litigation. And I support to Your Honors that that is an appropriate finding and that the court did not abuse its discretion when it reviewed the facts at hand, when it reviewed the arguments of counsel in the briefing to find that that had not, that the prejudice had not been made or that sanctions were warranted under that. Was there testimony or declarations by the officers, or by the officer whose phone was run over, about what happened and why he didn't keep the phone? Yes, Your Honor. There was a declaration that was submitted in the response to the spoiliation motion that is provided as part of this record. Do you, by chance, know the record site? Not off the top of my head, but I know it was included in the briefing. Okay. And it is the Chris Bryant's response to plaintiff's spoliation motion. It was included as an attachment and as an exhibit, which is part of the record that has been provided in this case. I see that I don't have much time, but I would ask the court that there has been no finding of an abuse of discretion in regards to the spoliation. There has been, the court, in regards to plaintiff's claims of the ratification and the ruling at trial. If I can just finish my thought real quick. I see that my time is up. Finish your thought. Okay. I see that there is no abuse of discretion in any of the findings that the court made, and I ask this court to deny plaintiff's appeal and uphold the jury and the lower court's decision on this matter. Thank you. Thank you, counsel. Would you give him? Your honors, I'm going to try to be as surgical as possible in addressing a number of  Number one, going back to the previous conversation, Dugan did specifically testify. This is deputy Dugan that applied the neck restraint. He specifically testified that he used the LVNR because he did not believe he was going to have backup. So I do believe that that kind of connects the dots, but getting to the harmless error argument by opposing counsel and that this was harmless, the verdict only addressed whether mutual aid was the quote unquote moving force behind the violation of the entity. Supervisory liability against Bryant individually is focused on his level of control and personal deliberate indifference. We're talking about the entity versus the individual. The other part I would probably point out, if we're looking at harmless error based upon the jury verdict, is that the verdict was part of a skewed record, which we've included as the different points that we brought up. You also brought up the issues as to the spoliation. And I wanted to only address that there was the district of Montana case regarding the testimony of the spoliator regarding the spoliation evidence being problematic. I would remind the court also that. You're out of time, so you better finish your thought quickly. I would say that any discussion about the spoliation not being central to plaintiff's claims, one, it goes to Bryant's ratification, credibility, and whether this was consistent with policy. And with that, I will thank you for your time and your consideration. Thank you, counsel, for your arguments. Case is submitted.